**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | |
|---|---|
| Dr. Amy Wu, ) | Docket No.  17 CV 07067 |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| v. ) | |
| ) | |
| ) | |
| AdvantageCare Physicians, P.C. ) | PLAINTIFF DEMANDS |
| ) | A TRIAL BY JURY |
| ) | |
| ) | |
| Defendant. ) | |

-------------------------------------------------------------X

Plaintiff, Dr. Amy Wu, by her attorneys, Young & Ma LLP, complains of Defendant as follows:

## PARTIES

1.      Plaintiff Dr. Amy Wu ("Plaintiff" or "Dr. Wu") is an Ivy League educated otolaryngologist/ENT surgeon and Chinese American female residing at 217 51st Avenue, Apt. 913, Long Island City, Queens, New York 11101.   Her date of birth is February 13, 1980.

2.      AdvantageCare Physicians, P.C. is a domestic professional corporation organized and existing under the laws of the State of New York, with a principle place of business located at 55 Water Street, 11th Floor, New York, New York 10041.

## NATURE OF ACTION

3.      This is a civil action for damages and remedies for gender and pregnancy discrimination, failure to provide accommodations, equal pay violations, and retaliation brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); Equal Pay Act of 1963, 29 U.S.C. § 206(d); Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA");

1

the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; New York Labor Law §194; and New York Labor Law §215.

4.      Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, emotional distress damages, punitive damages, liquidated damages, pre-judgement and post-judgment interest, legal fees and costs based on Defendant's violations of Plaintiff's statutory rights to equal employment opportunity, equal pay, freedom from pregnancy discrimination, reasonable accommodation, retaliation and wrongful termination.

## JURISDICTION AND VENUE

5.      Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

6.      Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 5, 2017.

7.      Plaintiff received a Right to Sue Letter on or about June 22, 2017.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

9.      The Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in and/or carries on a business in the state of New York, committed the discriminatory and retaliatory acts herein described, and/or is engaging in substantial and not isolated activity within the state of New York.

## STATEMENT OF MATERIAL FACTS

10.     Defendant AdvantageCare Physicians ("ACPNY") is a multispecialty practice provider serving half a million patients in the five boroughs of New York City and Long Island.  ACPNY

markets focus on patients' health by providing patients with high-quality, team-based, coordinated care. ACPNY has 36 office locations, 29 medical specialties, 400 primary care and specialist physicians and 165 care teams.

11.     At all relevant times, Plaintiff worked for Defendant in New York City locations.

12.     Plaintiff has a bachelors from University of Pennsylvania, a medical degree from Stanford University, performed her residency at University of California San Diego and completed an advanced laryngology/neurolaryngology fellowship at New York Center for Voice & Swallowing Disorders.

13.     Plaintiff was previously licensed in California and is a licensed physician and surgeon in New York.

14.     Plaintiff is a board certified otolaryngologist with the American Board of Otolaryngology.

15.     Plaintiff is a member of the American Academy of Otolaryngology for Head and Neck Surgery and the Chinese American Medical Society.

16.     Plaintiff joined ACPNY on or around September 2014 at a $290,000 per annum salary that she later found was less than male comparative doctors with the same or lesser qualifications, experience and/or profitability for ACPNY.

17.     Prior to recent pre-textual excuses to force her to resign, Dr. Wu received excellent performance reviews and acknowledgement of her productivity. Her direct supervisor Dr. Avinash Singavarapu wrote in an October 23, 2015 review, "Your strengths are care, quality and collaboration. Your ability to lead a team shows in your management of your care team. The quality of your work is demonstrated in patients' satisfaction. You have also met the value of

citizenship by proactively giving out talks."  Plaintiff excelled in strategic orientation, collaboration, change leadership, leading, innovation and communication.

18.     In February 2017 (the month of the attempted termination and/or forced resignation), Dr. Nicole Yvette Thomas Sealey wrote, "Dr. Wu is driven to improve her practice and staff and is a wonderful asset, she will continue to improve her PA [physician assistant] to a more independent level."

19.     Prior and current doctors that practice at ACPNY have confirmed that Dr. Wu is highly regarded, productive and warranted additional resource support such as her own exam room and staff support.

20.     A prior CMO Dr. Joseph Zietlin and Dr. Avni Thakkore both have indicated that Dr. Wu should be the head of Otolaryngology.

21.     Drs. Binh Lam, Walter Yee, Ludlov Sychikov, Shah, Sheelawanti, Patrick Wu, Antunex, Nicole Thomas, Patel-Pannullo, Sandra Nurse, Chinnappala, Suresh Patel, Batra, and Barasch all have or currently refer to Dr. Wu.

22.     Based on objective score card analysis and given that Plaintiff has a 10,000 RVU (top 25% in the country), Dr. Wu was qualified for a $549,214 per annum compensation at ACPNY but she was capped at $465,000 because of her starting salary and caps on salary growth rates.

23.     In the end of December 2014 through March 2015, Dr. Wu took her first maternity leave while working at ACPNY.  When she returned, she was very overbooked with little time to express breast milk during work and never took lunch breaks.  Dr. Wu pumped, worked and ate at her desk.  She endured this lack of accommodation without complaint and an unevenly high workload because she believed she would be made whole in compensation for her contributions at some later time.

24. By April 2015, Dr. Burgos had taken Plaintiff's case for a pay raise to the financial committee and obtained a $20,000 increase for her, making her compensation $310,000 by that point. However, this was only because Plaintiff agreed to take hospital calls and work nights so it was not a merit increase but just for additional work.

25. By November 2015, Dr. Wu started to speak to John Gallagher and Dr. Sandip Parikh about fair compensation and the then-CMO Dr. Joseph Zeitlin. Dr. Wu also discussed expanding her practice, improving patient care and requested new equipment and team expansion. Plaintiff alleges that had she been a male doctor at this revenue success and productivity, she would have been paid more and also had more support.

26. In November 2015, Plaintiff only had one medical assistant (MA) and she received a registered nurse (RN). A new PA began in June 2016. By June 2016, Plaintiff's practice had expanded to four exam rooms, overflow room, and consultation room so she was clearly one of the most productive and profitable doctors for ACPNY (although lower paid than male comparatives).

27. By February and March 2016, Dr. Wu discovered that ACPNY interviewed Dr. Anil Arora and offered him a starting $425,000 salary when she started at $290,000 and was at the time still paid $372,000 per annum.

28. Dr. Wu reported her concerns about unfair salary to Dr. Joseph Zeitlin by email and phone again noting high productivity and unfairly low compensation.

29. On April 8, 2016 and April 28, 2016, Dr. Wu followed up with Dr. Zeitlin to reconsider providing her with more fair compensation.

30.     From March 2016 through February 2017, Plaintiff repeatedly discussed compensation with Dr. Avni Thakkore and many others.  Unfortunately, Dr. Zeitlin, who was supportive, did not return to his position as CMO.

31.     By June 16, 2016, Dr. Wu emailed John Gallagher and Dr. Avni Thakkore that she was seeing above 38 patients, which is many more than others.  She indicated that her score card justified a $555,000 salary since her RVU is over 10,000.

32.     By September 1, 2016, Dr. Wu reported that her RVU is 1.5-2.5 times more than doctors in her specialty across the country.  Therefore she is losing incentive to see more patients as she had been discussing compensation to no avail for 10 months by that point.

33.     On September 28, 2016, CFO Art Byrd complimented Dr. Wu's productivity and Dr. Wu also discussed compensation with him.

34.     By the end of January, Dr. Wu informed staff Patricia Rahim (MA), Ewa Osewski (RN) and Jenny He (PA) about her pregnancy.  Dr. Wu also informed other staff.  ACPNY spreads news about such things internally very quickly.

35.     By mid February, Dr. Wu had gained 10 pounds and was 18 weeks pregnant and showing.

36.     Recognizing that she had been instrumental to the growth of ACPNY in ENT and as a whole, that her score cards justified a $549,214 compensation when she was capped to be raised only to $465,000, and that she had excellent feedback from peers and patients, Dr. Wu reported once again on February 8, 2017 to Nicolle Comeforo (HR), Darlene Mercierca, William Voight and Dr. Avni Thakkore that she had been unfairly treated given the prevailing salary cap and yet was pressured to see more patients.  She had spent 2.5 years building the Forrest Hills and Cambria Heights office, generating more RVUs than 75% of the otolaryngologists in the

country. She indicated in the February 8, 2017 email that if her compensation were still denied, she would prefer to work part time instead of putting forth her full efforts and taking time away from family when there was no hope of equal pay.

37.     In response to her February 8, 2017 email, Nicolle Comeforo requested that she call on February 13, 2017.

38.     On February 14, 2017, due to her requests for equal pay and because ACPNY knew of her pregnancy and upcoming maternity leave, ACPNY informed Plaintiff that they were terminating the employment relationship.  Dr. Nicole Thomas (regional medical director), Nicolle Comeforo (HR), and Mr. Thomas Marino (VP of Operations) came to tell her that she had to leave her employment by June 14, 2017.

39.     First, ACPNY proposed that Dr. Wu's salary should be cut 40% without cutting her requirements and that she must leave her job by June 14, 2017.

40.     When my client reiterated that she had a due date in July 2017, the VP of Operations Thomas Marino reiterated "then you definitely have to leave by June 2017."

41.     Once again, the termination came **_six days_** after her final demand for fair compensation or request to be part time and several weeks after most doctors, staff and patients she worked with learned that she was pregnant.

42.     ACPNY was so certain of their termination and/or forced resignation decision that they discussed the possibility of lifting restrictive covenants and allowing Dr. Wu to compete and promised the possibility of her being a preferred provider but never reduced any of the promises to writing.

43.    To clarify the work environment and the compensation and terms and conditions of her male comparative doctors during Dr. Wu's tenure, Dr. Wu provides the below estimates and descriptions:

- Dr. Stephen J. Marra - had a dwindling score card but was paid more than Dr. Wu and started at a higher salary than her

- Dr. Stephen Kushnick - an older and not as productive doctor who started at a higher salary

- Dr. Sreekrishna Donepudi - male doctor who confirmed that Dr. Wu should have started at an above $300,000 compensation due to her fellowship training

- Dr. Anil Arora - an Indian male 44 year old otolaryngologist who began in June 2016 at a $425,000 salary when Dr. Wu started at $290,000 and was still paid $372,000 at the time. Additionally he had less patient satisfaction ratings and was a foreign medical graduate. This candidate had to shadow my client to get up to speed and took over the Cambria Heights office that she built up. This demonstrates that Dr. Arora should have been hired to assist Dr. Wu and not be treated as equal or her superior in terms of salary. Dr. Wu had requested support in April 29, 2015. Dr. Arora agrees that Dr. Wu should be paid $500,000-$600,000.

- Two other male candidates started around the time of Dr. Arora and were also making in the high $300,000 and mid $400,000 starting

- Dr. Simon S. Levy - lower competency than Dr. Wu and graduated from a foreign medical school with higher starting salary

44.    Dr. Wu was constantly overbooked during her entire tenure compared to better paid male, often White, doctors. She had consistent struggles to get support. She is not addressed as "doctor" by the staff although male doctors get that professional respect. Dr. Avni Thakkore is a female doctor who had become the head of cardiology but then was demoted back in February 2017. Meanwhile, Dr. Wu's direct supervisor Dr. Anivash Singavarapu is a male cardiologist who is very stable and growing in authority.

45.    By February 28, 2017, after notice of her termination and/or forced resignation, Dr. Wu reminded Darlene Mercieca that she is pregnant and cannot run overbooked sessions with just an

RN.  Ms. Mercieca responded, "What does pregnancy have to do with it?" completely ignoring reasonable accommodation obligations and pregnancy discrimination laws under federal, state and city laws.

46.    On March 3, 2017, Nicolle Comeforo tells Dr. Wu that she is in a separate category than a large group of lay offs and that ACPNY wanted to give her four months as a "hard and fast" deadline to leave.  Ms. Comeforo reiterated that Dr. Wu must leave her job by June 2017 and when Dr. Wu asked for this separation to be confirmed in writing, Ms. Comeforo said she would confirm with the new CMO Dr. Rodriguez and get back to her in a week.  She never got back to Dr. Wu.

47.    On March 16, 2017, Dr. Wu emailed Dr. Sandip Parikh and Nicolle Comeforo requesting pregnancy accommodation in the reduction of her case load.  She indicated that she spends 15 minutes per follow up patient and 30 minutes with new consults seeing 36 patients per 8.5 hour shifts.  Half the patients are new consults which take longer.  Dr. Wu also left a voicemail to Ms. Comeforo reiterating her request for reasonable accommodation that day and reminding of her need to start FMLA leave in July and requested ACPNY start the process.

48.    Dr. Wu was still not receiving any breaks or reduction in her workload.

49.    On March 24, 2017, Dr. Wu called Gina Tymus indicating that she had 38 patients scheduled the following Thursday where 35 was the cap previously placed.  Half of the patients are new consults that take longer.  Dr. Wu was 24 weeks pregnant at this time and had no lunch breaks.  Ms. Tymus acknowledged there were no lunch breaks scheduled and promised to look into this.

50.    On April 3, 2017, Dr. Wu followed up with Gina Tymus, Nicolle Comeforo, Dr. Avinash Singavarapu and Dr. Nicole Thomas that her schedule had not been lightened.  She was still

seeing 26 new consults and 10 follow ups. Therefore there was no change even after HR promised twice to reduce her work load. Dr. Wu was asking just for 16 new consults or 32 follow ups which is the average amount for male and/or non-pregnant doctors. Therefore she was asking for an accommodation which included simply being treated the same as male doctors.

51. At this point, ACPNY was well on its way to forcing Dr. Wu to resign and had no interest in giving her accommodation, equal terms and conditions and/or starting her FMLA process.

52. Previously on March 21, 2017, Dr. Wu's first employment attorney had already sent a demand letter. ACPNY's outside counsel made no substantial offer to resolve the matter and also denied that Dr. Wu was terminated. This corroborates Dr. Wu's allegation that ACPNY wanted to force her to resign due to repeated requests for equal pay and knowing of her pregnancy and need for leave without providing her with any severance.

53. On May 2, 2017, Dr. Wu followed up with HR that she wanted to begin her FMLA leave on July 5th and return on October 17th inquiring about EPIC in basket and patient care coverage. HR ignored her requests until the week before her start date of leave and asked her to direct all communications to the insurance company. HR refused to engage in any interactive conversation with Dr. Wu as to her pregnancy and/or leave even as she reminded them of her high risk pregnancy and previous post partum issues. In retaliation for raising equal pay and pregnancy discrimination, and retaining counsel, HR and ACPNY also refused to accommodate Dr. Wu in any other way.

54. On June 6, 2017, Dr. Wu sent an email to Gina Tymus, nursing supervisor Marilyn and Drs. Singavarapu and Thomas that her medical assistant Patricia gets pulled away to cover other clinic areas when she has active sessions as well as her RN Ewa. In this email, Dr. Wu mentioned retaliation and "punitive" measures for requesting accommodation and hiring counsel.

55.     ACPNY refused to allow Dr. Wu to take PTO/clinic days before her due date and ignored her pregnancy complications.   Prior to active complaints about equal pay and pregnancy discrimination/failure to accommodate, ACPNY had provided to her ability to use PTO days and clinic/CME days prior to her due date for her last maternity/FMLA leave at the end of 2014.

56.     After putting Dr. Wu through all the stress of forced termination/resignation and then denying through counsel that she would be terminated (and therefore preventing her from further alternative employment plans), ACPNY officially terminated Dr. Wu on July 26, 2017, two days after a very complicated delivery where Dr. Wu required additional recovery time because of the difficulty of the labor.

57.     Dr. Wu found her letter of termination on July 27, 2017 right after returning from the hospital after her very difficult labor and delivery after months of stress and anxiety created by ACPNY.

58.     At the time of Plaintiff's termination, Plaintiff had sent a demand letter via counsel concerning the discrimination and retaliation herein outlined, she had filed an EEOC Charge, and was on maternity/FMLA leave.

## AS AND FOR A FIRST CAUSE OF ACTION FOR GENDER/PREGNANCY DISCRIMINATION ARISING UNDER TITLE VII

59.     Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

60.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of the above-named Defendant.

61.     Defendant was and is an employer within the meaning of Title VII.

62.    At all times relevant to this case, Plaintiff was and is an Asian American female and since January 2017 had informed her employer of her pregnancy, and therefore is a member of protected classes within the meaning of Title VII.

63.    At all relevant times, Defendant was aware of Plaintiff's sex and pregnancy.

64.    Defendant engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's gender and/or pregnancy in the detailed ways outlined in the Statement of Material Facts.

65.    At all relevant times, Defendant was aware of and/or condoned and/or participated in the harassment and abuse towards Plaintiff.

66.    Defendant's misconduct was so severe or pervasive that a reasonable person in Plaintiff's position would find that Plaintiff's work environment was intimidating, hostile or abusive to female and/or pregnant doctors.

67.    Plaintiff reasonably believed that the work environment was intimidating, hostile or abusive as a result of Defendant's conduct.

68.    Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct even after Plaintiff retained counsel and made formal complaints by letter and by the filing of an EEOC Charge.

69.    Defendant's discrimination and harassment were intentional, intended to harm Plaintiff and was done with malice or reckless indifference to Plaintiff's federally protected rights.

70.    Ultimately Defendant terminated Plaintiff due to her gender and/or pregnancy.

71.    As a direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, and advancement

in her career after significant work for Defendant. Plaintiff will also have suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

72.     As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, and lasting embarrassment and humiliation.

73.     Plaintiff's damages include financial loss, loss of employment opportunities, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

74.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendant's under Title VII.

**AS AND FOR A SECOND CAUSE OF ACTION FOR GENDER AND/OR PREGNANCY DISCRIMINATION ARISING UNDER NEW YORK STATE HUMAN RIGHTS LAW**

75.     Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

76.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

77.     At all relevant times, Defendant was and is an employer within the meaning of the NYSHRL.

78.     At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

79.     At all times relevant to this case, Plaintiff was and is an Asian American female and since January 2017 had informed her employer of her pregnancy, and therefore is a member of protected classes within the meaning of NYSHRL.

80.     At all relevant times, Defendant was aware of Plaintiff's sex and pregnancy.

81.     Defendant engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's gender and/or pregnancy in the detailed ways outlined in the Statement of Material Facts.

82.     Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct even after Plaintiff retained counsel and made formal complaints by letter and by the filing of an EEOC Charge.

83.     Defendant's conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of gender and/or pregnancy, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

84.     Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

85.     Plaintiff's damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

86.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, emotional distress damages, reasonable attorney's fees, and compensatory damages from Defendant under the NYSHRL.

**AS AND FOR A THIRD CAUSE OF ACTION FOR GENDER AND/OR PREGNANCY
DISCRIMINATION ARISING UNDER NEW YORK CITY HUMAN RIGHTS LAW**

87.     Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

88.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

89.     At all relevant times, Defendant was and is an employer within the meaning of the NYCHRL.

90.     At all relevant times herein, Plaintiff was and is a person within the meaning of the NYCHRL.

91.     At all relevant times, Plaintiff was and is an employee within the meaning of the NYCHRL.

92.     At all times relevant to this case, Plaintiff was and is an Asian American female and since January 2017 had informed her employer of her pregnancy, and therefore is a member of protected classes within the meaning of NYCHRL.

93.     At all relevant times, Defendant was aware of Plaintiff's sex and/or pregnancy.

94.     Defendant engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's gender and/or pregnancy in the detailed ways outlined in the Statement of Material Facts.

95.     Defendant engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

96.     Defendant's conduct, as alleged herein, were carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

97.     As a direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost raises; and (vi) attorney's fees and costs.

98.     As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

99.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, back pay, front pay, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendant under the NYCHRL.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR RETALIATION ARISING UNDER TITLE VII, NYSHRL, NYCHRL

100.    Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

101.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Section(s) 2000e et seq., New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. Sections 290 et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code Sections 8-101 et seq. for relief based upon the unlawful employment practices of the above-named Defendant.

102.    Defendant engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL.

103.    Plaintiff complained about Defendant's misconduct through counsel and through the filing of an EEOC Charge as specifically outlined in the Statement of Material Facts and previous paragraphs.

104.    In response to Plaintiff's complaints, Defendant retaliated against her as outlined in detail in the Statement of Material Facts.

105.    Defendant contributed to the harassment, hostile work environment and retaliation; was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

106.    Defendant's retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally, state and city protected rights.

107.    As a direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, raises and equal compensation.  Plaintiff has also suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

108.    As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, and lasting embarrassment and humiliation.

109.    As Defendant's conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

110. Plaintiff's damages include financial loss, loss of employment opportunities, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

111. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, interest, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendant under Title VII, NYSHRL, and NYCHRL.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR FAILURE TO PROVIDE REASONABLE ACCOMMODATION FOR PREGNANCY ARISING UNDER NEW YORK CITY HUMAN RIGHTS LAW**

112. Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

113. Defendant's termination and/or forced resignation of Plaintiff and refusal to make reasonable accommodation for Plaintiff on the basis of her pregnancy constituted unlawful discrimination in violation of § 8-502 of the NYCHRL.

114. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, back pay, front pay, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendant under the NYCHRL.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR PAY DISCRIMINATION ARISING UNDER EQUAL PAY ACT, 29 U.S.C. § 206(d)**

115. Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

116. Defendant discriminated against Plaintiff within the meaning of the Equal Pay Act by providing her with lower pay and other less favorable terms and conditions of employment than

similarly situated male doctors on the basis of her gender even though Plaintiff performed equal and/or more work requiring equal and/or more skill, effort, and responsibility as her similarly situated male doctors.

117.    Plaintiff and similarly situated male doctors all performed equal job duties and functions.

118.    Plaintiff and similarly situated male doctors all performed equal work that required equal skill, effort and responsibility, and that was performed under similar working conditions.

119.    Defendant discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denial of raises and bonuses and other compensation, discriminatory denial of promotions and/or titles, and other forms of discrimination in compensation in violation of the Equal Pay Act.

120.    The differential in pay between Plaintiff and her male colleagues was not due to seniority, merit, quantity or quality of production, or a factor other than sex.  Rather, the differential in pay was due to Plaintiff's gender.

121.    Defendant caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender in violation of the Equal Pay Act.

122.    Defendant's actions were not done in good faith nor did it have any reasonable grounds for believing that its acts or omissions were not a violation of the Fair Labor Standards Act.

123.    Plaintiff repeatedly reported the Equal Pay Act violations as more specifically outlined in the Statement of Material Facts, through counsel and through the filing of an EEOC Charge and Defendant refuses to remediate the situation.

124.    As a result, Plaintiff is entitled to liquidated damages.

125.    Defendant's foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a).

126. As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and lost earning capacity and loss of confidence.

127. Plaintiff is entitled to recover monetary damages and other damages and relief under 29 U.S.C. § 206(d) et seq. and 29 U.S.C. §255(a) et seq.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK STATE LABOR LAW § 194

128. Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

129. Plaintiff is an "employee" as defined under N.Y. Lab. Law § 190(2).

130. Defendant is an "employer" as defined under N.Y. Lab. Law § 190(3).

131. N.Y. Lab. Law § 194 states, "No employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a differential based on: a. a seniority system; b. a merit system; c. a system which measures earnings by quantity or quality of production; or d. any other factor other than sex."[1]

132. Defendant paid Plaintiff's male comparative doctors significantly more due to sex.

133. The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Material Facts.

134. Defendant paid Plaintiff less than her male counterpart doctors performing the same work.

135. As a result of the foregoing, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover "the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as

---

[1] Subsection "d" applies only though January 19, 2016 and has been replaced with the following: "a bona fide

required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law an additional amount as liquidated damages… up to three hundred percent of the total amount of the wages found to be due for a willful violation."

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR RETALIATION UNDER THE FLSA

136.    Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

137.    Plaintiff is a "person" as defined under 29 U.S.C. § 203(a).

138.    Plaintiff is an "employee" as defined under 29 U.S.C. § 203(e)(1).

139.    Defendant is an "employer" as defined under 29 U.S.C. § 203(d).

140.    The FLSA contains an anti-retaliation provision that forbids employers to "discriminate against any employee because such employee has filed any complaint" related to FLSA. 29 U.S.C. § 215(a)(3).  The Second Circuit has defined the phrase "filed any complaint" to encompass oral complaints made to employers in a context that makes the assertion of rights plain.  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

141.    Plaintiff complained to Defendant as to unfair compensation, unequal compensation, discrimination, gender discrimination, unequal pay based on gender repeatedly, orally and in writing, between November 2015 and to the date of her termination as alleged more specifically in the Statement of Facts.

142.    Plaintiff's complaints about not receiving fair compensation and bonus were protected activities.

143.    Shortly after each of Plaintiff's oral and/or written complaints, she would suffer immediate adverse employment actions and ultimately suffered termination as more specifically alleged in the Statement of Facts.

144.    Such retaliation is likely to deter other employees at Defendant's place of employment from complaining about wage issues.

145.    As a result of Defendant's unlawful retaliation, Plaintiff is entitled to compensatory damages, liquidated damages and punitive damages.

146.    Plaintiff is also entitled to compensation in an amount to be determined at trial as compensatory damages for emotional distress and non-pecuniary harm suffered as a result of Defendant's retaliatory acts.

147.    Defendant's conduct as aforesaid was retaliatory.

148.    Accordingly, Defendant is liable to Plaintiff under § 215 of the FLSA for reinstatement and/or front pay, back pay, compensatory damages, punitive damages, liquidated damages, prejudgment and post-judgment interest, costs, and reasonable attorney's fees.

## AS AND FOR A NINTH CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK LABOR LAW §215

149.    Plaintiff repeats and realleges each and every allegation in the Complaint with the same force and effect as though more fully set forth at length herein.

150.    Plaintiff was an "employee" as defined under N.Y. Lab. Law § 190(2).

151.    Defendant was an "employer" as defined under N.Y. Lab. Law § 190(3).

152.    During the course of her employment with Defendant, Defendant failed to pay fair compensation and bonus to Plaintiff.

153.    During the course of her employment with Defendant, Defendant failed to pay Plaintiff the same as her male comparatives in violation of N.Y. Lab. Law § 194.

154.    Plaintiff reported these failures to pay adequately directly to her supervisors/HR and management orally and in writing as more specifically alleged in the Statement of Facts.

155.    Following Plaintiff's reports, she suffered adverse employment actions and her employment was terminated by Defendant as more specifically alleged in the Statement of Facts.

156.    Such retaliation is likely to deter reasonable employees from complaining about wage issues at Defendant's place of employment.

157.    As a result of the foregoing, Plaintiff has been denied employment, lost wages and benefits, and has incurred damages.

158.    As a result of the foregoing, Plaintiff is entitled to appropriate relief, including enjoining the conduct of Defendant, and ordering payment of lost compensation and damages, liquidated damages, costs and reasonable attorney's fees to Plaintiff by Defendant.

159.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendant as follows:

A.    Issue a declaratory judgment declaring that the actions of the Defendant, as set forth in this Complaint, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); Equal Pay Act of 1963, 29 U.S.C. §206(d); Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.;  New York Labor Law §194; and New York Labor Law §215;

B.    Enjoin and restrain the Defendant and all persons acting on their behalf, or in concert with it, from engaging in such unlawful discriminatory and retaliatory practices;

C.    Enter judgment in favor of the Plaintiff, and against the Defendant, for back pay and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendant's unlawful and discriminatory conduct, together with interest;

D.    Enter judgment in favor of the Plaintiff, and against the Defendant for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E.    Award the Plaintiff punitive damages;

F.    Award the Plaintiff liquidated damages;

G.    Award the Plaintiff pre-judgment and post judgment interest;

H.    Award the Plaintiff reasonable attorney's fees, together with the costs of this action;

I.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

J.      Such other and further relief as the court deems appropriate under the circumstances.

Dated: New York, New York
      September 17, 2017

Respectfully submitted,

By: _____
      Tiffany Ma, Esq.
      Young & Ma LLP
      575 Lexington Avenue, 4th Floor
      New York, NY 10022
      T: (212) 971-9773
      F: (212) 600-2301
      tma@youngandma.com